IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STARS UNION EQUIPMENT
TECHNOLOGY (JIANGSU) CO., LTD.,

    Plaintiff,

      v.

TRU-STONE SPC INC., f/k/a
ROKPlank Inc.,

    Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-4181-TWT

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on the Plaintiff's
Motion for Summary Judgment [Doc. 19] and the Defendant's Motion for
Summary Judgment [Doc. 20]. For the reasons set forth below, the Plaintiff's
Motion for Summary Judgment [Doc. 19] and the Defendant's Motion for
Summary Judgment [Doc. 20] are GRANTED in part and DENIED in part.

## I.    Background[1]

The Plaintiff is a Chinese corporation that sources flooring equipment
and materials from producers in China and sells them to flooring
manufacturers in the United States. (Pl.'s Statement of Undisputed Material
Facts ¶¶ 1, 3 [Doc. 19-2]). The Defendant is one such customer who placed

---

[1] The operative facts on the Motions for Summary Judgment are taken
from the parties' Statements of Undisputed Material Facts and the responses
thereto. The Court will deem the parties' factual assertions, where supported
by evidentiary citations, admitted unless the respondent makes a proper
objection under Local Rule 56.1(B).

orders with the Plaintiff to deliver a variety of Chinese flooring equipment and materials (the "Goods") for the Defendant's use. (*See id.* ¶ 4). The Defendant would do so primarily through placing orders by email or messaging applications such as WhatsApp or WeChat. (*Id.* ¶ 5). Such orders from the Plaintiff obviously require payment. (*See id.* ¶ 4).

Upon receiving the Defendant's purchase orders, the Plaintiff would issue proforma invoices ("PIs") that reflected the Defendant's order, identifying the name, quantity, unit price, and delivery time of the Goods, as well as payment instructions. (*Id.* ¶ 7). When such PIs were issued by the Plaintiff, the Defendant generally was required to make a down payment to the Plaintiff between thirty percent and one hundred percent of the total price to confirm the purchase. (*Id.* ¶ 8). The Defendant would generally confirm the PI by making the down payment required through wire transfers. (*Id.* ¶ 9).

Once the Goods were ready for shipment, the Plaintiff would confirm certain details with the Defendant and would generate a commercial invoice ("CI"). (*Id.* ¶ 11; Def.'s Statement of Undisputed Material Facts ¶ 3 [Doc. 20-1]). After confirmation from the Defendant, the Plaintiff would ship the Goods and provide bills of lading ("BOLs") to the Defendant. (Pl.'s Statement of Undisputed Material Facts ¶ 12). The Defendant would be required to tender the remaining balance owed to the Plaintiff under the terms set by the PIs. (*Id.* ¶ 13). Under the PI terms, the Defendant was never permitted to tender payment after the date of delivery and receipt of the Goods. (*Id.*). The parties

dispute whether the PIs, CIs, and BOLs accurately reflected the Goods shipped and the amount due to the Plaintiff. (Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶ 12).

Over a period ending in 2020, the Defendant placed fourteen PIs with the Plaintiff (the "Transactions"). (*See* Pl.'s Statement of Undisputed Material Facts ¶ 14; Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶ 14 [Doc. 27]). For each Transaction, the Plaintiff sourced, procured, and paid for all the Goods that the Defendant requested. (Pl.'s Statement of Undisputed Material Facts ¶ 15). The Plaintiff then shipped the Goods and CIs associated with the Transactions, which the Defendant accepted without any objection. (*Id.* ¶¶ 16-17, 19; Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶ 16-17, 19; *see* Def.'s Statement of Undisputed Material Facts ¶¶ 4-5). The Defendant paid the Plaintiff a sum for the Goods associated with the Transactions. (*See* Pl.'s Statement of Undisputed Material Facts ¶¶ 23-24; Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 23-24). However, the Plaintiff contends that the Defendant failed to pay the full amount owed. (*See* Pl.'s Statement of Undisputed Material Facts ¶¶ 22-27).

To recover payment for these outstanding invoices, the Plaintiff filed a complaint against the Defendant with this Court. (*See generally* Compl. [Doc. 1]). The Defendant timely answered. (*See generally* Answer [Doc. 5]). The parties engaged in and completed discovery as of July 14, 2025. (*See generally* Joint Mot. for Extension of Time Or. [Doc. 17]). Soon after, both parties filed

3

the Motions for Summary Judgment before the Court.  The Court now turns to address them.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). A court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). On cross-motions for summary judgment, a court views the facts "in the light most favorable to the non-moving party on each motion." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

Because these Motions for Summary Judgment address the same issues and arguments, the Court will address them together. The Plaintiff's Complaint asserts six claims against the Defendant under Georgia law: (1) action for price under O.C.G.A. § 11-2-709, (2) breach of contract, (3) suit on

account, (4) conversion, (5) unjust enrichment, and (6) attorney's fees. (*See* Compl. ¶¶ 26-66). The Defendant argues that the Plaintiff cannot prevail on any of the counts based on the evidence related to the Transactions before the Court. (*See* Br. in Supp. of Def.'s Mot. for Summ. J., at 2-3 [Doc. 20-2]). Alternatively, the Defendant argues that even if summary judgment is not granted in its favor on all counts, that it should be granted as to seven Transactions because the suit is barred by the applicable statutes of limitation. (*See id.* at 3). The Plaintiff wholly disagrees and argues that Summary Judgment should be granted in its favor instead based on the evidence before the Court. (*See* Br. in Supp. of Pl.'s Mot. for Summ. J., at 1-2 [Doc. 19-1]). Before addressing the issues on the merits, the Court addresses two evidentiary issues raised by the Defendant.

### A. Evidentiary Disputes

The Defendant takes issue with certain payment records and the PIs, CIs, and the BOLs submitted by the Plaintiff within its Motion for Summary Judgment.

#### 1. Payment Records

The Plaintiff attached two versions of transaction records in support of its Motion for Summary Judgment in their original form as well as in a form translated into English. (*See generally* Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. 1, Ex. B ("Payment Records") [Doc. 19-3]). The Defendant argues that the Court should not consider the translated version of the Plaintiff's records in

ruling on the motions because it was not disclosed to the Defendant prior to the close of discovery or the filing of its motion. (*See* Br. In Resp. to Pl.'s Mot. for Summ. J., at 7 n.1).

The Defendant is correct in arguing that a party's failure to disclose documents to the other party in discovery can warrant the document's exclusion in any subsequent motion or trial. *See United States v. An Easement and Right-of-way Over 1.58 Acres of Land*, 343 F. Supp. 3d 1321, 1343-44 (N.D. Ga. 2018). The Federal Rules of Civil Procedure control the discovery obligations of all parties and non-parties in litigation. *See* Fed. R. Civ. P. 26, 34. Rule 34 controls the procedure by which documentary evidence, among others, is handled. *See* Fed. R. Civ. P. 34. When a party requests a document under Rule 34, "the general rule is that the requesting party bears the burden of the cost of translating documents produced." *Luc v. Korean Air Lines Co., Ltd.*, 2019 WL 7824597, at *2 (N.D. Ga. Jul. 9, 2019). Inherent to this requirement within Rule 34 is the notion that a disclosing party is not required to translate documents it produces in discovery into English. *See Baloa Diaz v. Edi Korta LLC*, 2025 WL 3551239, at *8 (S.D. Fla. Dec. 10, 2025) ("There is no requirement that a party translate documents they produce in discovery into English."). Affirming that Rule 34 has no such requirement, at least one court within this District has rejected a plaintiff's attempt to compel the production of English translation documents that were prepared for use by the defendant's counsel, even when such documents may already exist. *See Luc*, 2019 WL

7824597, at *2.     Accordingly, the Court finds the Defendant's argument unpersuasive and will consider the English translation of the payment records provided by the Plaintiffs.

### 2.  Invoices and Bills of Lading

The second evidentiary issue arises from a dispute over the legitimacy and accuracy of the Plaintiff's invoices and BOLs. The Plaintiffs attach the relevant PIs, CIs, and BOLs for the fourteen Transactions within their Motion for Summary Judgment. (*See generally* Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. 1, Ex. A ("Transaction Invoices and Records") [Doc. 19-3]). These documents are attached to an affidavit filed by Yin Fang, the Chief Executive Officer and Marketing Director for the Plaintiff, which is cited throughout the Plaintiff's Statement of Undisputed Material Facts. (Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. 1 ("Fang Aff.") ¶¶ 1, 29 [Doc. 19-3]; Pl.'s Statement of Undisputed Material Facts ¶¶ 1-26, 28). In response to any part of the Plaintiff's Statement of Undisputed Material Facts that discuss the PIs, CIs, or BOLs, the Defendant repeatedly denies the accuracy and legitimacy of the documents, citing to Fang's deposition testimony. (Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 12-14, 16-19, 24). But the cited portion of the deposition fails to contain any information that shows a dispute over the accuracy or legitimacy of these documents. All the cited portion of the deposition shows is counsel for the Defendant questioning Fang, as a Rule

30(b)(6) witness, about the specifics of a certain invoice submitted by the Plaintiff. (*See* Fang. Dep. at 59:12-59:25 [Doc. 20-4]).

The Local Rules for the Northern District of Georgia contain the following requirement for a non-movant's response to a party's statement of undisputed facts:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses *supported by specific citations to evidence* . . .; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with [Local Rule 56.1(B)(1)].

LR 56.1(B)(2)(a)(2), NDGa (emphasis added).

The Court concludes that the Defendant's response does not fit into any of the three categories. The Defendant's responses are denials as to the accuracy of the Plaintiff's underlying contention that the PIs, CIs, and BOLs are valid and accurate. (*See* Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 12-14, 16-19, 24). Thus, the denials do not fall into the second or third categories on their face. While the Defendant attempts to conform its response to the first category, its responses to the Plaintiff's facts are not supported by a citation to the relevant evidence because they cite to a non-relevant portion of Fang's deposition testimony. (*See id.*). The Court will thus consider the accuracy and legitimacy of the PIs, CIs, and BOLs as admitted by the Defendants.

8

This finding also applies to the facts underlying the Defendant's Motion for Summary Judgment. Although the Defendant argues against the validity and accuracy of the pertinent documents in their briefing, almost every piece of evidence submitted by the Defendants contradicts this argument. First, in the Defendant's own Statement of Undisputed Material Facts, it acknowledges (1) the existence of the PIs, CIs, and BOLs, (Def.'s Statement of Undisputed Material Facts ¶ 1), (2) facts surrounding the operation and contents of the CIs, including specific invoice numbers and the dates on the invoices, (*id.* ¶¶ 2-5), and (3) that it owed a certain amount under those CIs (which matches the Plaintiff's total), (*id.* ¶ 6). Second, Adnan Bayramoglu, the Director for the Defendant, admits in his affidavit that, for each of the Transactions, a PI, CI, and BOL were created and that the CI controlled the terms of the transaction. (Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 2 ("Bayramoglu Aff.") ¶¶ 5-6 [Doc. 20-5]).

Third, and most fatal to its position, is the Defendant's inclusion of the Plaintiff's invoices within its Motion for Summary Judgment. In doing so, Bayramoglu's affidavit states that "*[t]rue and accurate copies* of the proforma invoice, commercial invoice, and bill of lading that make up each transaction, kept in the ordinary course of [the Defendant's] business, are attached as Exhibits A-N." (*Id.* ¶ 11 (emphasis added)). The Defendant then attaches certain PIs, CIs, and BOLs that are identical to the ones submitted by the Plaintiff, complete with the Plaintiff's Bates numbering scheme at the bottom

9

of each document. (*See generally* Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 2, Exs. A-N [Docs. 20-6, 20-7, 20-8, 20-9, 20-10, 20-11, 20-12, 20-13, 20-14, 20-15, 20-16, 20-17, 20-18, 20-19]; Transaction Invoices and Records). Upon the Court's review, these documents filed by the parties contain no material differences. (*See generally id.*).

Ultimately, this amounts to an admission by Bayramoglu, someone who is "familiar with [the Defendant's] day-to-day business operations and the facts pertinent" to the instant action, that the Defendant acknowledges that the Plaintiff's documents filed with the Court are indeed true and accurate. (*Id.* ¶ 2). This fact is compounded by the lack of evidence provided by the Defendant as to what the true amount owed should be. And although Bayramoglu argues in his deposition that he "would have to spend weeks to compile all those documents and tell you how each one fits with the other" and to determine which amounts the Defendant has already paid, (Bayramoglu Dep. at 58:10-h58:14 [Doc. 19-4]), the Court finds no reason to give the Defendant the benefit of the doubt, especially when it asks the Court to enter summary judgment against the Plaintiff. A court should view the evidence and draw any inferences in the light most favorable to the non-movant. *Adickes*, 398 U.S. at 158-59. But here, even if the Defendant were the non-movant, the Court would struggle to find any dispute over the validity of the invoices. Accordingly, the Court will treat the PIs, CIs, and BOLs provided by the Plaintiff as legitimate across both motions for summary judgment.

10

### B. Statute of Limitations

The Defendant argues that the Plaintiff's suit is time barred by the applicable statute of limitations for at least eleven of the fourteen Transactions under the terms of the PIs and at least seven (or maybe eleven) of the fourteen Transactions under the terms of the CIs. (*See* Br. in Supp. of Def.'s Mot. for Summ. J., at 12-18; Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 14-17).

A district court may grant summary judgment when an action is time-barred under the statute of limitations and there is no genuine dispute as to any material fact. *See King v. King*, 69 F.4th 738, 742-44 (11th Cir. 2023) (discussing a district court's grant of summary judgment on the merits for an issue involving the applicable statute of limitations). Thus, the Court addresses each issue raised by the Defendant.

### 1. Breach of Contract, Action for Price, and Suit on Account

A contract involving the sale of goods is governed by the Georgia Uniform Commercial Code ("UCC"). *All Tech Co. v. Laimer Unicon,* LLC, 281 Ga. App. 579, 582 (2006). Under the Georgia UCC, an action for breach of any contract for the sale of goods "must be commenced within four years after the cause of action has accrued." O.C.G.A. § 11-2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." O.C.G.A. § 11-2-725(2). For cases where a buyer fails to pay, the breach occurs on the date when the payment was due for a written invoice. *Advance Tufting, Inc. v. Daneshyar*, 259 Ga. App. 415, 417 (2003). This statute

11

of limitations generally applies to actions arising out of breach of contract, price, and suit on account. *See id.* at 416-18.

The Plaintiff argues, under Georgia law, that each payment by the Defendant to its commercial account with the Plaintiff constituted a new promise to pay which renewed the statute of limitations for the Plaintiff to file suit. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 14-15). The pertinent statute states that "[a] payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability shall be equivalent of a new promise to pay." O.C.G.A. § 9-3-112. But payment alone does not renew the debt owed to a plaintiff. Along with payment, a debtor must (1) acknowledge to the creditor that a debt exists and (2) "sufficiently identify the debt or afford the means by which the debt might be identified with reasonable certainty." *Anderson v. Kaye*, 371 Ga. App. 626, 631 (2024) (citation modified). Georgia courts impose a light burden to trigger a renewal of the statute of limitations for a creditor to bring action. The Plaintiff has provided evidence of the Defendant's continuous payments toward its commercial account. The Defendant had a single account with the Plaintiff and made payments towards its debt on that account from October 9, 2020 until June 10, 2021. The Plaintiff also provided evidence that it demanded payment from the Defendant and repeatedly provided it with records showing the amount that was still due on its commercial account. The statute of limitations for the Plaintiff's claims on account began to run on the Defendant's last date of

payment, June 10, 2021. *See e.g., SKC, Inc, 326 Ga. App. at 801.* The Plaintiff filed its Complaint on September 17, 2024, well within the four-year statute of limitations.

### C. The Plaintiffs' Contractual and Quasi-Contractual Claims

The Plaintiff brings four contract-adjacent claims, a tort claim, and a claim for attorney's fees. The Plaintiff's contractual and quasi-contractual counts are: (1) the Georgia UCC action for the price, (2) common law breach of contract, (3) suit on account, and (4) unjust enrichment. (Compl. ¶¶ 26-48, 59-63). "The interpretation of a contract is normally a question of law to be resolved by the court[s]." *Willesen v. Ernest Comms., Inc.*, 323 Ga. App. 457, 459 (2013). The Plaintiff and the Defendant do not argue that the invoices are ambiguous. Accordingly, "[i]f there is no ambiguity, then [a court] simply enforce[s] the contract according to its terms." *Id.*

First, to establish a prima facie case for an action for the price under the Georgia UCC against a buyer, the seller must demonstrate that the buyer did not pay for goods that he accepted. *See* O.C.G.A. §§ 11-2-301, 11-2-709; *see also Hydro Sys., Inc. v. Factory Automation Sys., Inc.*, 771 F. Supp.3d 1342, 1354 (N.D. Ga. 2025) ("[I]n a contract for goods, the object of the transaction is to purchase goods for a given price."). Where a buyer fails to pay the price as it becomes due, a seller may recover the price of the goods accepted with incidental damages. O.C.G.A. § 11-2-709(1).

13

Second, "'[t]he elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'" *McAlister v. Clifton*, 313 Ga. 737, 742 (2022) (citation omitted). "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible." *Liggins v. Parkwood Living, LLC*, 373 Ga. App. 140, 145 (2024) (citation modified). Where a jury lacks any basis to grant damages to the plaintiff, summary judgment is appropriate on a breach of contract claim. *St. James Ent. LLC v. Crofts*, 837 F. Supp. 2d 1283, 1290 (N.D. Ga. 2011) (citing *Holmes v. Drucker*, 201 Ga. App. 687, 688-89 (1991), then citing *Ogletree v. Navistar Int'l Transp. Corp.*, 245 Ga. App. 1, 3 (2000)).

Third, for a plaintiff to establish a claim on a commercial account under Georgia law and be entitled to the increased rate of prejudgment interest, (1) the defendant must owe a debt to the plaintiff, (2) the debt must arise out of a transaction to sell or furnish goods or services, and (3) the plaintiff must have rendered to the defendant a statement of the account prior to filing suit. *See* O.C.G.A. § 7-4-16. While a court cannot apply this increased rate of prejudgment interest where a plaintiff only pleads breach of contract, *Noons v. Holiday Hosp. Franchising, Inc.*, 307 Ga. App. 351, 355 (2010), a court may find that a defendant breached a contract and apply O.C.G.A. § 7-4-16 where a

14

plaintiff pleaded both counts within its complaint, *Hampshire Homes, Inc. v. Espinosa Const. Servs., Inc.*, 288 Ga. App. 718, 720-24 (2007).

Finally, the equitable claim of unjust enrichment exists where (1) "a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant," (2) "that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof," and (3) "that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Sitterli v. Csachi*, 344 Ga. App. 671, 673 (2018). "'It has long been the law in Georgia that . . . no recovery may be had [for unjust enrichment] when a contract governs all claimed rights and responsibilities of the parties.'" *City of Roswell v. Bible*, 351 Ga. App. 828, 832 n.7 (2019) (citation omitted).

As to all of these contractual claims, the Plaintiff has produced fourteen PIs, CIs, and BOLs demonstrating the price and shipment of the Goods. (*See generally* Transaction Records and Invoices). Additionally, the Plaintiff has also attached a record of all payments made by the Defendant to settle the Transactions, along with summary tables for the Court's convenience. (*See generally* Payment Records). Furthermore, the Defendant admits that it received and did not object to the Goods it received as part of the fourteen Transactions. (Def.'s Response to Pl.'s Statement of Undisputed Material Facts

15

¶¶ 16-17). The Defendant further does not dispute that it was obligated to pay for the Goods as part of each Transaction. (*Id.* ¶ 18).

On its face and because the Court holds that the PIs, CIs, and BOLs are accurate and valid, the Court finds that the Plaintiff has made a prima facie case for three of their contractual claims. First, there exists a contract between the parties through the PIs and CIs where the Plaintiff would ship the Goods to the Defendant and the Defendant was obligated to pay the required amount to the Plaintiff. (*See* Pl.'s Statement of Undisputed Material Facts ¶¶ 5-14). Second, the Plaintiff shipped the Goods, as required by the contracts, to the Defendant. (*Id.* ¶ 16). Third, the Defendant accepted the Goods at a certain point in time. (*Id.* ¶ 17). Fourth, the Defendant failed to pay the full price as owed under the PIs and CIs, stopping payment as of June 10, 2021. (*Id.* ¶¶ 23-24). Finally, the Plaintiff sent the Defendant a statement of its account through constant written communication between employees for the parties. (*Id.* ¶¶ 26-27).[2]

---

[2] The Defendant denies these factual allegations, stating that (1) the Plaintiff's citations do not support the Plaintiff's facts, (2) the stated facts are immaterial, and (3) it denies the substance of any communication over the invoices. (*See* Def.'s Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 26-27). The Plaintiff cited a paragraph in Fang's declaration as proof that the Plaintiff reached out with a statement of the Defendant's account. (*See* Pl.'s Statement of Undisputed Material Facts ¶ 26). The cited portion of Fang's declaration says exactly what the Plaintiff states in its Statement of Undisputed Material Facts. Additionally, such information is relevant to whether the Plaintiff can avail its claim of O.C.G.A. § 7-4-16 as proof of liquidated demand. *See* O.C.G.A. § 7-4-16. Finally, the Defendant cannot deny the substance of the Plaintiff's claim because it provides no evidence otherwise and Bayramoglu, the Director for the Defendant, directly acknowledges

Under these facts, the Plaintiff has shown that it can establish claims for action on the price, breach of contract, and claim on account independently. For action on the price, the Plaintiff showed that the Defendant accepted the Goods but did not pay in full as payment became due. *See* O.C.G.A. § 11-2-709(1). For the Plaintiff's breach of contract claim, it showed that the terms of the PIs and CIs were breached by the Defendant's failure to remit full payment for the Goods it accepted and that damages followed because the Defendant's breach resulted in nonpayment to the Plaintiff on those contracts. *See McAlister*, 313 Ga. at 741. Finally, for claim on account, the Plaintiff showed that (1) the Defendant failed to pay for the Goods, (2) the Defendant owes the Plaintiff a certain amount of money because it continues to fail to remit full payment of the Goods, creating a debt with the Plaintiff, (3) the debt arose out of transactions for goods, and (4) the Plaintiff presented the Defendant with a statement of the account. *See* O.C.G.A. § 7-4-16.

Still, the Defendant makes several arguments against these claims. The Defendants' first argument applies to all contractual and quasi-contractual claims and is based on certain factual uncertainties over the breach and damages elements. When the Defendant was making payments on the fourteen Transactions, the Defendant never designated which of the Transactions each payment was meant for. (*See* Payment Records at 88-116). During Fang's

conversations with the Plaintiff over the statement of its account. (*See* Bayramoglu Dep. at 46:6-46:25, 58:23-58:25).

deposition, Fang repeatedly asserted that all Transactions had unpaid amounts but that he could not recall how much was unpaid on each Transaction, although he could say what the aggregate amount owed was by the Defendant. (*See* Def.'s Statement of Undisputed Material Facts ¶¶ 8-21). The Defendant uses this uncertainty to argue that the Plaintiff cannot prove that the Defendant breached any of the contracts and even if it can, that damages are too uncertain for a jury to find any damages for all of its contractual claims. (*See* Br. in Supp. of Def.'s Mot. for Summ. J., at 4-9; Def's Br. in Opp'n to Pl's Mot. for Summ. J., at 9-12).

This argument is not persuasive because the Defendant overstates the evidentiary requirement necessary for the Plaintiff to demonstrate breach and damages. The Plaintiff has met its evidentiary burden in showing (1) the amount contractually owed by the Defendant in each Transaction through the relevant PIs and CIs, (2) the payments already made by the Defendant to alleviate its debt with the Plaintiff, and (3) the final amount owed by the Defendant as of the date of last payment.

The Defendant's next argument disputes that a "commercial account" existed with the Plaintiff under the meaning of O.C.G.A. § 7-4-16. Specifically, the Defendant argues that a "commercial account" cannot exist because the only written agreements between the Plaintiff and the Defendant are the invoices for each Transaction. (*See* Def's Br. in Opp'n to Pl's Mot. for Summ. J., at 12-13). The Defendant likens the Plaintiff's argument now that a

18

commercial account exists as an "11th hour change" and asks this Court to discard the argument. (*Id.* at 14).

This argument is wholly divorced from the statute. A "commercial account" is defined broadly as "an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services other than a 'retail installment transaction.'" O.C.G.A. § 7-4-16. Just because the debt arises out of a breach of contract does not preclude the debt being characterized as a "commercial account." For example, in *Hampshire Homes*, the Georgia Court of Appeals held that a party can bring an action to recover on unpaid invoices and such invoices can be characterized as a "commercial account" simply because "[t]hose invoices represented obligations for the payment of money arising out of transactions to furnish labor and materials." *Hampshire Homes*, 288 Ga. App. at 719-20, 721. Just because the Plaintiff's main theory arises out of breach of contract does not mean the Plaintiff should be denied from characterizing the resulting debt as a "commercial account" when it squarely fits the definition. The invoices surrounding each Transaction represent an obligation for the payment of money arising out of a transaction to sell goods. Thus, the Defendant's second argument fails.

Finally, the Defendant takes issue with the calculation of the Defendant's partial payments. The Plaintiff adds all totals paid by the Defendant and credits such amounts against the total amount owed by the

Defendant. (*See generally* Payment Records). But the Defendant notes that one transaction (Transaction no. CAUS20180726SPC) does not reference the Defendant within the PI or CI but instead references another company partially owned by Bayramoglu. (*See* Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 5; Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 8). The Defendant argues that, because the Defendant is the only party to the litigation, that the two companies are not interchangeable under a theory of contract for the specific Transaction. (*Id.*).

This argument is not convincing. The invoices associated with Transaction no. CAUS20180726SPC do not name the Defendant as the buyer, instead naming another entity, "TRUSA MermerOrg." (*See* Transaction Invoices and Records at 30-31). There is no reference to the Defendant on these invoices. (*See id.*). If the PI and the CI are the contracts between the parties, then the Defendant is not a party to the contract underlying the Transaction. Still, the Court concludes that the Defendant is bound by the terms of the relevant Transaction under equitable estoppel. Generally, a party is not bound to the terms of a contract they have never signed. *Cajun Global LLC v. Swati Enters., Inc.*, 283 F. Supp. 3d 1325, 1330 (N.D. Ga. 2017). But several state law doctrines, such as assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver, and estoppel allow a contract to be enforced against a non-signatory. *Id.* (quoting *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011)).

20

Third-party beneficiary and estoppel theories are relevant. "The general law provides that a beneficiary need not be specifically named in a contract, so long as the contract shows that it was intended for the third-party's benefit." *Lankford v. Orkin Exterminating Co., Inc.*, 266 Ga. App. 228, 229 (2004) (citation omitted). "Third-party beneficiaries under the contract 'are bound by any valid and enforceable provisions of the contract in seeking to enforce their claims.'" *Id.* (citation omitted). Further, an agent-principal relationship can arise when the principal ratifies the acts of the agent. *Id.* at 229-30 (citing O.C.G.A. § 10-6-1). In *Lankford*, the Court found that a non-signatory was bound by a contract signed by another individual for pest extermination services for their house because the non-signatory accepted the benefits and made payments for the services, effectively ratifying the contract. *Id.* at 229-30. Equitable estoppel can also apply to bind a non-signatory to a contract when "there is a tight relatedness of the parties, contracts, and controversies" and where there are "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Jackson v. Stevenson*, 374 Ga. App. 741, 746-47 (2025) (citation modified), *rev'd on other grounds*, 2026 WL 1390716 (2026).

Evidence to support both theories exists here. The Defendant makes several admissions within its Statement of Undisputed Material Facts and in response to the Plaintiff's Statement of Undisputed Material Facts that are relevant here. First, the Defendant admits that it entered into fourteen

21

separate contracts with the Plaintiff. (Def.'s Statement of Undisputed Material Facts ¶ 1). The Defendant next admits that Bayramoglu and his brother were the two individuals who primarily communicated with the Plaintiff across the fourteen Transactions. (Def's Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 5-6). The next admission shows that the Defendant was heavily involved in the Transaction, since the Defendant admits it was consulted prior to the generation of the PI, CI, and BOL of the relevant Transaction. (*Id.* ¶¶ 7, 9, 11-12).

The Defendant admits to making down payments on all Transactions, including the relevant Transaction here. (*Id.* ¶ 8). It then accepted all of the Goods delivered under the relevant Transaction. (*See id.* ¶ 17-18). Further, it admits to being obligated to pay for the goods received relating to the 14 individual transactions entered into between the parties. (*Id.* ¶ 18). Evidence from the payment records provided by the Plaintiff confirms that such payments were made. It is also clear that the Defendant has made payments on the relevant Transaction because the remaining amount left on the invoices to be paid, $641,567.05, is *less* than the total amount to be paid under the invoices related to the Transaction, $1,756,500. (*See* Payment Records at 30-31, 58).

At minimum, there are sufficient facts before the Court to conclude that the Defendant is bound to the terms of Transaction no. CAUS20180726SPC under a theory of ratification because the Defendant accepted the benefits of

22

the Transaction and partially performed. *See Lankford*, 266 Ga. App. at 229; *Comvest L.L.C. v. Corporate Sec. Grp., Inc.*, 234 Ga. App. 277, 280 (1998) ("'Parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other.'" (citation modified)). Additionally, the facts admitted by the Defendant demonstrate that the Defendant was so intertwined with the relevant Transaction that could warrant the application of estoppel because the signatory was Bayramoglu, the contract benefited the Defendant, and the Defendant organized and paid for the Goods. Thus, the Defendant's arguments ultimately fail.

As a final note, although the Plaintiff prevails on the merits on most of the contractual claims, the Defendants ultimately prevail on the issue of unjust enrichment and common law breach of contract. The existence of a contract between the Plaintiff and the Defendant precludes unjust enrichment as a cause of action. *See City of Roswell*, 351 Ga. App. at 832 n.7. Additionally, because the Plaintiff succeeds on its action for the price claim, the Plaintiff cannot prevail on common law breach of contract because the Georgia UCC supplants the common law cause of action. *See Exp. Dev. Canada v. Shore Acres Plant Farm, Inc.*, 526 F. Supp. 3d 1139, 1149-50 (S.D. Ala. 2021) (finding that Alabama UCC action for the price claims (which is identical to the Georgia UCC) displace common law breach of contract actions when a plaintiff prevails

23

on the former); *Hydro Sys.*, 771 F. Supp. 3d at 1360 (discussing O.C.G.A § 11-2-102(2)(b) and concluding that a claim for unjust enrichment is not supplanted by the UCC). Thus, the Plaintiff prevails solely on its Georgia UCC Action for the Price and Claim on Account counts.

### D. Conversion

Under Georgia law, "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. "To establish a conversion claim, a plaintiff must demonstrate that (1) he or she owns title to or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it." *Rubenstein v. Palatchi*, 359 Ga. App. 139, 142 (2021). But "conversion is not a viable claim where there is nothing more than a failure by the defendant to pay money owed to the plaintiff." *Internal Med. All., LLC v. Budell*, 290 Ga. App. 231, 239 (2008); *see Faircloth v. A.L. Williams & Assocs., Inc.*, 206 Ga. App. 764, 768 (1992) (holding that "contract debt" is not properly recovered by an action in tort). Despite the Plaintiff's contentions, the Plaintiff's action sounds in breach of contract rather than tort, as it has prevailed on the merits of its breach of contract action. Accordingly, the Court holds that the conversion count fails.

### E. Attorney's Fees

Finally, the Court addresses the Plaintiff's request for attorney's fees on its Motion for Summary Judgment. The Plaintiff argues that it is entitled to an award of attorney's fees because the Defendant has acted in bad faith and has been stubbornly litigious. (*See* Br. in Supp. of Pl.'s Mot. for Summ. J., at 16-17). Under Georgia law, "[t]he expenses of litigation generally shall not be allowed as a part of the damages." O.C.G.A. § 13-6-11. But "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, *the jury may allow them.*" *Id.* (emphasis added). The text of this statute is critical to the Court's refusal to grant summary judgment on the Plaintiff's plea for attorney's fees. The Georgia Court of Appeals has emphasized that, "[b]ased on the statutory language 'the jury may allow them,' [the court has] held that a trial court cannot award attorney fees under [O.C.G.A. § 13-6-11] at summary judgment." *Coleman v. Phillips*, 369 Ga. App. 466, 473 (2023) (citation modified) "[A]lthough a trial court is permitted to grant such fees when it sits as a trier of fact, it is not a trier of fact on a motion for summary judgment." *Id.* (citation modified). Thus, the issue of whether the Defendant acted in bad faith is an issue to be resolved at trial.[3]

---

[3] Determining whether a party has acted in bad faith under O.C.G.A. § 13-6-11 is "connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim

But the Court will grant summary judgment to the Defendant on the Plaintiff's plea for attorney's fees arising out of stubborn litigiousness. This is because the existence of a "bona fide controversy" between the parties precludes an award of attorney fees premised on stubborn litigiousness. *Nash v. Reed*, 349 Ga. App. 381, 384 (2019). "'Although whether a bona fide controversy exists is normally a question for the jury to decide, [the Georgia Court of Appeals has] also repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness.'" *Id.* (citation omitted). Here, there is a dispute of material fact on the issue of whether the statute of limitations precludes many of the Plaintiff's claims. This amounts to a bona fide controversy between the parties. Accordingly, the Court will grant summary judgment to the Defendant on the Plaintiff's claim for attorney's fees premised on stubborn litigiousness.

### IV.    Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [Doc. 19] is GRANTED in part and DENIED in part. The Defendant's Motion for Summary Judgment [Doc. 20] is GRANTED in part and DENIED in part. The Clerk is directed to enter final judgment in favor of the Plaintiff in the

---

after the cause of action has already arisen. *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1318 (N.D. Ga. 2024). A finding of bad faith in a breach of contract action "'is not bad faith in refusing to pay but bad faith in the transaction out of which the cause of action arises.'" *Lexmark Carpet Mils, Inc. v. Color Concepts, Inc.*, 261 Ga. App. 622, 627-28 (2003).

principal amount of $641,567.05 plus interest and costs. The Clerk is directed to enter final judgment in favor of the Defendant as to the Plaintiff's claim for attorney fees.

SO ORDERED, this __8th__ day of July, 2026.

THOMAS W. THRASH, JR.
United States District Judge